IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| RAFAEL MORENO-MORALES<br>Petitioner<br><br>vs<br><br>THE COMMONWEALTH OF<br>PUERTO RICO<br>ANABELLE RODRIGUEZ, Secretary of<br>Justice ofuerto Rico<br>MIGUEL PEREIRA, Secretary of Corrections<br>Administration of Puerto Rico<br>VICTOR RIVERA-GONZALEZ, Ex-secretary<br>of Corrections Administration of Puerto Rico<br>RONALD GOLDEROS-CABALLERO, Chief<br>Technician of Penal Records<br><br>Respondents | CIVIL 04-1009CCC |

## OPINION AND ORDER

Before the Court is petitioner Rafael Moreno-Morales' Motion in Compliance With Order filed on October 20, 2005 (**docket entry 39**), which includes a narrative of the events relevant to his claim that his civil rights were violated when the Department of Corrections of the Commonwealth of Puerto Rico ordered a revised certification of liquidation of sentences given the fact that petitioner's indeterminate state sentence of 22 to 30 years for second degree murder was imposed by the Commonwealth of Puerto Rico Superior Court, San Juan Division, on June 23, 1988 to be served "consecutive to those which he is serving." See June 23, 1988 sentence attached to Order to Show Cause (docket entry 38).  As stated in the Order to Show Cause, contrary to what petitioner alleged in his complaint, his state sentence for second degree murder was imposed to be served consecutively with the federal sentence of thirty (30) years that the undersigned imposed upon him in Criminal No. 84-0070(CCC), United States v. Rafael Moreno-Morales, et. al., on one count of conspiring to obstruct justice, give false testimony and suborn perjury, and five substantive counts of perjury.  It is also undisputed that the several "Release Date Calculation Control Sheet" (RDCCS) prepared by the Corrections

CIVIL 04-1009CCC                    2

Administration of the Commonwealth of Puerto Rico which indicated a minimum release date in 1997 and a maximum release date in 2002 were made based on the mistaken belief that the federal and state sentences were concurrent.  Upon verifying that Superior Court Judge Luis Cruz-Jiménez of the San Juan Superior Court imposed on June 23, 1988 an indeterminate sentence of 22-30 years of imprisonment consecutive to those he was serving, i.e. the federal sentence of 1985, the Corrections Administration of the Commonwealth of Puerto Rico issued on January 16, 2001 a RDCCS which it notified to the Parole Board of the Commonwealth of Puerto Rico updating the release date calculations.  According to this certification, petitioner will have served the minimum of his state sentence on June 14, 2015 and the maximum on December 16, 2019.  The Parole Board issued two rulings on January 17, 2001 and August 2, 2001, which are also attached to the Order to Show Cause, ruling that it lacked jurisdiction to assess petitioner's case and instructed the Corrections Administration to return the case for consideration of the Board when petitioner became eligible.

Petitioner Moreno-Morales commenced serving his thirty (30) year federal sentence on March 28, 1985, and extinguished the same by January 31, 2003, apparently after being granted parole.  Once he served his federal sentence, he was transferred on February 11, 2003 to the jurisdiction of the Commonwealth of Puerto Rico correctional system to commence serving his consecutive indeterminate state sentence of 22 to 30 years.[1]

Abandoning his initial claim that the federal and state sentences were concurrent, petitioner now argues in his response to the Order to Show Cause, at ¶¶ 5 & 6, that it makes no difference whether the Commonwealth sentence was concurrent or consecutive to his federal sentence because under a statute of the Commonwealth of Puerto Rico, specifically under 34 L.P.R.A. §1025, it is provided that: ". . . In the cases of persons sentenced to more than one

---

[1] These dates are taken from the Judgment of April 30, 2004 of the Court of Appeals of the Commonwealth of Puerto Rico, Bayamón Region, and the record of the Moreno-Morales federal case in this Court.

CIVIL 04-1009CCC                                              3

indeterminate sentence, whether such sentences are to be served concurrently or consecutively, the Parole Board shall acquire jurisdiction when such persons have served a prison term equal to the longest minimum...."

This statute, repealed since 1980, which established when the Parole Board of Puerto Rico acquired jurisdiction in situations where the person had been sentenced to more than one indeterminate sentence, is wholly inapplicable to the issues before the Court.[2] Petitioner disregards the fact that said statute referred to sentences imposed by the Commonwealth of Puerto Rico upon individuals who are subject to the authority of the Commonwealth Parole Board at a given point in time. He claims that 34 L.P.R.A. §1025 does not differentiate between Commonwealth or federal sentences. There is simply no need for a state statutory provision which is addressing matters and persons subject to its Parole Board to include the proviso that it does not apply to sentences imposed by another jurisdiction. The jurisdiction and the authority of the Parole Board of Puerto Rico extends to convicted persons, either sentenced under the former system of indeterminate sentences or the current one of determinate sentences in Puerto Rico, who are under the custody of a correctional institution in the Commonwealth. The statute which established it clearly defines the authority, power and duties of the Parole Board of Puerto Rico at 4 L.P.R.A. §1503 in the following terms:

The Parole Board will have the following authority, powers and duties:

(a) may grant parole to any person confined in any of the correctional institutions of Puerto Rico who had been or was convicted for offenses committed before the effective date of the law which establishes the System of Determinate Sentences in Puerto Rico, or who had been or was convicted for offenses committed under the law which establishes the System of Determinate Sentences in Puerto Rico, when it has satisfied the fine established in Article 49-C of Law No. 115 of July 22, 1974, as amended, and had served half of the fixed sentence that was imposed upon it, except when the person had been convicted under that system of determinate sentences for first degree murder, in which case the Board will

---

[2] As a matter of fact, that statute does not apply to petitioner in any circumstance because in the state jurisdiction he only had a single indeterminate sentence imposed upon him and the statute clearly states that it applies when a person is serving more than one indeterminate sentence in the Commonwealth of Puerto Rico.

CIVIL 04-1009CCC                                             4

>    acquire jurisdiction when the person has served twenty-five (25) natural years or when it has served ten (10) natural years if the person convicted for said offense was a minor tried as an adult. Notwithstanding, in the cases of first degree murder committed under the modality contained in section (b) of Article 83 of the repealed Law No. 115 of July 22, 1974, as amended, the Board may not grant parole.
>    . . .

(Our translation.)

Petitioner, therefore, twice fails in his attempt to evade the fact that his Commonwealth sentence was imposed consecutive to his federal sentence and that the calculation of his minimum and maximum dates of release by correctional authorities in Puerto Rico cannot ignore this reality. This is not the case of a person who was sentenced in the judicial system of Puerto Rico to serve more than one indeterminate sentence, concurrent or consecutive, as to whom the Parole Board of Puerto Rico would acquire jurisdiction when he served a prison term equal to the longest minimum term, pursuant to 34 L.P.R.A. §1025. Rather, this is the case of a person who was first sentenced in a federal court, later sentenced to a consecutive term of imprisonment by a Commonwealth judge, and as to whom the Parole Board of Puerto Rico acquires jurisdiction only when the circumstances of an inmate imprisoned in a Puerto Rico correctional institution serving a state sentence are present, as contemplated in 4 L.P.R.A. §1503. It was not until Moreno-Morales was released by federal authorities to the local correctional system, upon having served his federal sentence, that is, on January 31, 2003, that his consecutive state sentence commenced. Therefore, it is from that moment on that the minimum/maximum release calculations regarding his incarceration at a Commonwealth institution were triggered. These calculations are governed by the Commonwealth statutory provisions and regulations,[3] and, the state sentence having been imposed consecutive to the federal sentence, the latter has no bearing whatsoever in determining his minimum/maximum release dates from state custody.

---

[3] Pursuant to 4 L.P.R.A. §1503(a)(2), a person sentenced to second degree murder is eligible for parole when he has served 80% of the sentence.

CIVIL 04-1009CCC                                        5

      The additional argument on which petitioner bases his civil rights complaint, that upon having served his federal sentence being transferred to the Commonwealth jurisdiction after completing his federal sentence, he was illegally classified as a "maximum security" inmate" as part of a systematic persecution against him by the Corrections Administration, also lacks merit. As the Court of Appeals of the Commonwealth explained in its judgment of April 30, 2004, petitioner sought review of that classification pursuant to the Corrections Administration internal administrative procedure.  After failing in his attempt to obtain a modification of said classification from the Administration, he sought judicial review from the Commonwealth's Court of Appeals, which ruled in his favor and ordered the Administration to reclassify him as a "minimum security" inmate.

      Although in its ruling the Commonwealth's Court of Appeals found that petitioner's initial classification as a "maximum security" inmate was not justified by the administrative record, said judicial conclusion that the initial classification was erroneously made does not transform the Administration's action into a federal constitutional wrong.  After all, it is apodictic that "[i]nmates have no protectable property or liberty interest in custodial classification." Whitley v. Hunt, 158 F.3d 882, 889 (5th Cir. 1998).  Thus, petitioner had no federal right to be housed in a particular facility, or in any particular area within a facility. Sandin v. Conner, 515 U.S. 472, 487 (1995).  And even in those circumstances where courts have found that a prisoner has been further deprived of his liberty, requiring the protections of due process, it has been established that "the state may cure a procedural deprivation by providing a later procedural remedy; only when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under [42 U.S.C.] section 1983 arise." McKinney v. Pate, 20 F.3d 1550, 1557 (11th Cir. 1994).

      Here, the opinion by the Commonwealth's Court of Appeals describes how petitioner had the benefit of an administrative review process, which he used, and of judicial review, where he

CIVIL 04-1009CCC                                       6

prevailed.  Hence, to the extent there was a constitutionally significant procedural deprivation, it was cured by the appeals process established by the Commonwealth.

The Court having found that when issuing to petitioner a revised RDCCS on January 16, 2001 defendants acted in conformity with relevant and applicable Commonwealth statutes and regulations, and that petitioner obtained redress through the established appeal mechanisms of the classification originally assigned to him by the Corrections Administration, it necessarily follows that petitioner has failed to show the impingement of any of his constitutional rights. Consequently, his complaint under 42 U.S.C. §1983 is hereby DISMISSED, with prejudice. Judgment shall be entered accordingly.

SO ORDERED.

At San Juan, Puerto Rico, on November 29, 2005.


                                        S/CARMEN CONSUELO CEREZO
                                        United States District Judge